## UNITED STATES FIDELITY & GUARANTY CO. v. JONES.
### No. 4410.

Circuit Court of Appeals, Seventh Circuit.
March 26, 1931.

Rehearing Denied June 8, 1931.

Leonard F. Martin and John R. Cochran, both of Chicago, Ill., for appellant.

Caruthers Ewing, of New York City, and Thomas Francis Howe and Henry S. Rademacher, both of Chicago, Ill., for appellee.

Before ALSCHULER and SPARKS, Circuit Judges, and FITZHENRY, District Judge.

FITZHENRY, District Judge.

Plaintiff (appellee here) sues to recover the amount of a supersedeas bond executed by defendant (appellant), which was given and approved in the case of Jones v. Thomas Rankin, in which Frank Graham Jones had recovered a judgment in the sum of $17,015.

In this case the declaration charges that the defendant surety company is indebted to plaintiff in the sum of $20,000 upon an alleged supersedeas bond executed May 21, 1926, by defendant, as surety, and Samuel L. Hastings, administrator of the estate of Thomas Rankin, deceased, as principal; that the bond was given by Samuel L. Hastings as administrator of the estate of Thomas Rankin, deceased, to have reviewed a certain judgment of the District Court of the Northern District of Illinois, in favor of Frank Graham Jones and against Thomas Rankin (who died after judgment was entered), for $17,015; that the judgment of the District Court was affirmed by the Circuit Court of Appeals [18 F.(2d) 833], and a writ of certiorari was denied by the Supreme Court [275 U. S. 547, 48 S. Ct. 85, 72 L. Ed. 419]; that the judgment and interest thereon have not been paid; and that plaintiff is entitled to recover damages in the sum of $20,000.

Defendant filed its two special pleas. In the first plea it alleged that, after the judgment of the District Court in favor of plaintiff and against Thomas Rankin, the said Rankin, who was a resident of Lake county, Ill., died intestate; that Samuel L. Hastings was appointed administrator of his estate by the probate court of Lake county, and he duly qualified and acted as such; that on May 21, 1926, an order was entered in the District Court allowing Hastings, as such administrator, to prosecute a writ of error to this court, and on the same day the bond now sued upon was given, from which it appears the bond was executed by Hastings in his capacity of administrator, with defendant as surety, and payable in "due course of administration"; that the administrator paid all costs in the cause in the District Court, Circuit Court of Appeals, and Supreme Court; that the administrator has proceeded in accordance with the statutes of the state of Illinois and the orders and directions of the probate court of Lake County, by which he was appointed to administer upon the estate of the said Thomas Rankin; that plaintiff's claim was filed by the plaintiff in the probate court and allowed by said court as a claim of the sixth class under the Illinois statutes; that, after the payment of such claims as under the Illinois statutes are required to be first paid, there remained for distribution among creditors of the sixth class the sum of $13,634.57; that due notice was given to the creditors of said estate of the date when the final report of said administrator would be filed in the probate court of Lake county, and no objections

were filed to said report; that such report was filed and approved, and the probate court directed the administrator to make distribution of the assets remaining in his hands among the creditors, and directed payment of plaintiff's claim in the sum of $6,180.70, being the distributive share of the assets of said estate as adjudicated by the probate court, payable in due course of administration on said claim of plaintiff; that the administrator tendered said distributive share to plaintiff, but it was refused, and the administrator has at all times since been and is ready to pay such sum to plaintiff; and that therefore, defendant alleged, it is not liable to plaintiff in this suit.

The second plea alleged that the administrator had paid all costs taxed in the several courts, and therefore this suit could not be maintained.

Plaintiff demurred to both pleas. The demurrer was overruled as to the first plea and sustained as to the second, and leave granted plaintiff to reply to the first plea. Thereafter an amended replication was filed to the first plea, setting up the pleadings in the original cause in the District Court, the judgment against Thomas Rankin, the death of Rankin, the substitution of Hastings as administrator, as defendant, and the petition of the administrator for a writ of error, the order of the District Court allowing the writ of error, the bond executed by the administrator, as principal, and defendant surety company, as surety.

Defendant demurred generally and specially to plaintiff's amended replication, which was overruled by the District Court; defendant elected to stand by its demurrer; and judgment was entered in favor of plaintiff (appellee), as above stated.

The errors relied upon here for reversal are the overruling of defendant's general and special demurrer to plaintiff's amended replication to defendant's first amended plea to the declaration, and in rendering judgment against defendant.

█ The real issue raised by defendant's first amended plea is that the bond sued upon was simply a bond to insure plaintiff, in the original suit, that the administrator would perform his duties and pay the amount of plaintiff's judgment, or the distributive share thereof, if the estate was insolvent, "in due course of administration"; that, having paid the costs which accrued in the original suit, by reason of its review in the Circuit Court of Appeals, and his effort to procure a writ

of certiorari in the Supreme Court, and having tendered to plaintiff there his distributive share of the insolvent estate of the judgment debtor, plaintiff therefore was not to recover on the bond.

The amended replication to which defendant demurred is an interesting document, setting out substantially the entire record in the original suit in the District Court of Jones v. Rankin, to recover the amount of the debt due and owing to Jones. It shows that on August 5, 1915, at Memphis, Tenn., Jones loaned to Rankin $10,000 on purely personal grounds, and took from Rankin two promissory notes for $5,000 each, with interest coupons attached. The notes were executed by Rankin individually and by Lakeside Manufacturing Company Block, of which Rankin was president, and each of which notes was due one year after date. Before the maturity of the notes, Rankin went into bankruptcy, March 27, 1916, and was discharged June 18, 1917. The amount of the indebtedness was proved up against the bankruptcy estate, and this, it was alleged, was with the distinct and positive understanding with Rankin that, the indebtedness evidenced by the notes being purely a personal and moral debt, regardless of the bankruptcy proceedings and independent thereof, defendant expected to pay the debt as soon as he was able; and that the bankruptcy proceedings had been instituted by him (Rankin) to better take care of personal obligations for which he felt a moral obligation, and Rankin had told Jones he need pay no further attention to the bankruptcy proceedings. Jones alleged that he relied upon these assurances, and took no further interest in the bankruptcy proceedings, and, after their conclusion, Rankin frequently promised and agreed to pay the indebtedness; that on May 19, 1920, Jones and his agent called on Rankin to settle the indebtedness due, when Rankin assured Jones he would within a few days from that date mail Jones a check, which he failed to do; that, since the discharge in bankruptcy, defendant Rankin sold his interest in the Nipple Manufacturing Company for $164,000, practically all cash, and was able to pay the amount of his indebtedness, as agreed, but failed to do so; that the stock of or interest in the Nipple Manufacturing Company was held in the name of Rankin's wife, and that she held the same for the use and benefit of Rankin, or that the same was issued to or held by Rankin's wife for the fraudulent purpose of removing the same from the reach of Rankin's creditors; that he was in truth and in fact and in law the real owner of the interest in the Nipple Manufacturing Company, and for a number of years subsequent to the alleged sale the Nipple Manufacturing Company had paid Rankin $15,000 per year; that, prior to the bankruptcy proceedings, Rankin had put large amounts of his property in the name of others to preserve and protect it for him against his creditors, etc.

Pleas to Jones' declaration were filed and issue joined. Rankin pleaded for his first plea his discharge in bankruptcy; the second, the general issue; and, the third, the five-year statute of limitations. On the date set for the trial, Jones produced a number of witnesses to show that Rankin was able to pay the indebtedness; and that counsel for Rankin, in order to shorten the matter, admitted that "he is now able to pay." Upon the request of Rankin and his counsel, on February 26th, there was executed and filed a stipulation of arbitration, expressly waiving trial by jury, in writing, and submitting the entire matter to Judge Carpenter, one of the District Judges; that the award of Judge Carpenter was to be a final decision as to all matters of fact and law; and that there was to be no appeal from a judgment upon his award. Following the execution of the stipulation, an effort was made on the part of Rankin to withdraw from the stipulation and agreement of arbitration.

Plaintiff's objection thereto was sustained; whereupon, afterwards, Judge Carpenter filed his findings of fact, sustaining the contentions of Jones, and finding that there was due and owing to Jones the sum of $17,015, and judgment was entered accordingly and execution ordered as of February 24, 1926. May 19th following, Rankin died; on May 21st following, Hastings was appointed administrator by the probate court of Lake county, and on the same day Hastings, as administrator, filed his petition for a writ of error. In the order granting the writ of error, the administrator was ordered by the court to file a supersedeas bond in the sum of $20,000, and the bond here sued upon was filed on which appellant here appeared as surety. It recites the litigation and judgment, the condition of the obligors that the administrator "shall prosecute said writ to effect, and shall answer for all damages and costs that may be awarded against him as administrator if he fails to make his plea good."

Appellant contends that, appellee having demurred to its special plea, and that de-

murrer having been overruled, appellee's only right was to traverse the plea or confess and avoid; that the amended replication does neither, but is an attempt to raise the same questions of law as were passed upon adversely to her upon a consideration of her demurrer to the first special plea.

Upon considering the demurrer to the special plea in the light of the limited facts contained therein, the trial court might well have held that, if the obligation were a mere bond to secure the final administration of his trust by the administrator and to pay the costs, the plea presented a good defense to the declaration. In such case it would have been proper to have overruled the demurrer. The plea sets out the contention that the obligation sued upon was one of an entirely different character from that contended on behalf of appellee. The effect of the amended replication, to which appellant's demurrer was overruled, is to deny that the obligation is a mere cost bond, and pleads facts to show it was in truth and in fact a supersedeas bond, and its effect was a clear traverse of appellant's amended first plea.

It is very earnestly contended that, because under the statutes of Illinois an execution might not issue upon the judgment against the administrator of the estate of Thomas Rankin, deceased, therefore there was nothing to supersede, and the execution of the judgment was stayed by force of the Illinois law, so that the force and effect of the bond given could only have been one to pay the costs of litigation.

If this were true, there would have been no reason for giving a bond in the sum of $20,000. As soon as the inventory had been filed and the volume of indebtedness proved against the estate ascertained, it was within the power of the judgment creditor to pursue his remedies in equity by the filing of a creditor's bill to recover assets which were undisclosed to the administrator, if there had been any. The facts pleaded in the amended replication show at least reasonable grounds to believe that there was a possibility of recovering something for the benefit of creditors. However, the stay order issued, conditioned upon the filing of the bond, in effect denying the judgment creditor the benefit of that remedy.

The federal statute governing bonds in error and on appeal is as follows:

"*Bond in Error and on Appeal.* Every justice or judge signing a citation on any writ of error, shall, except in cases brought up by the United States or by direction of any department of the Government, take good and sufficient security that the plaintiff in error or the appellant shall prosecute his writ or appeal to effect, and, if he fail to make his plea good, shall answer all damages and costs, where the writ is a supersedeas and stays execution, or all costs only where it is not a supersedeas as aforesaid." USC title 28, § 869 (28 USCA § 869) R. S. § 1000.

Paragraph 2 of rule 36 of the Supreme Court of the United States (28 USCA § 354) and paragraph 1 of rule 12 of the Rules of this Court, are substantially the same, and provide:

"Supersedeas bonds must be taken, with good and sufficient security, that the plaintiff in error or appellant shall prosecute his writ or appeal to effect, and answer all damages and costs if he fail to make his plea good. Such indemnity, where the judgment or decree is for the recovery of money not otherwise secured, must be for the whole amount of the judgment or decree, including just damages for delay, and costs and interest on appeal. * * *."

The quotation above is from the Supreme Court rule formerly 29. The rule of this court gives the judge of the District Court a somewhat larger discretion.

The Circuit Court of Appeals for the Sixth Circuit had a similar question, involving similar rules, before it in American Surety Co. v. North Packing & Provision Co., 178 F. 810, 811, and the court, among other things, said:

"We have no doubt that the refusal and the ruling which the Surety Company claims to be erroneous were right. The appeal, as is not denied, operated as a supersedeas and stayed execution. This result could not have been obtained without security that the appellant should answer all damages and costs if its appeal proved unsuccessful. Rev. St. U. S. § 1000 (U. S. Comp. St. 1901, p. 712); Supreme Court rule 29 (3 Sup. Ct. XVI); rule 13 of this court (150 Fed. XXVIII, 79 C. C. A. XXVIII). Both the rules referred to further require that, where the decree appealed from is for the recovery of money not otherwise secured, the security must be 'for the whole amount of the decree, including just damages for delay, and costs and interest on the appeal.' The obligors, in executing the bond, bound themselves to nothing less than the rules required. If there could ever

have been any question as to the construction, for the present purpose, of the statutory provisions, or of the rules, or of a bond like this, given in compliance with them, the doubt has long since been settled. In deciding Rosenstein v. Tarr, 51 F. 368, 370, the Circuit Court for the District of Massachusetts said in 1892:

" 'There is no doubt that a supersedeas bond, conditioned according to the statute for prosecuting an appeal with effect and answering all damages and costs, covers not merely compensation for the delay arising from the appeal, but also the amount of the decree appealed from, so far as the latter directs the payment of money by the appellant to the appellee.' "

Even though it might be considered that the writ of execution could not have been issued upon the Jones judgment which was appealed from, it must not be overlooked that there is a distinction between the word "execution," referring to the writ, and anything that might lawfully be done in execution of the judgment. Where the statute above cited was under consideration and similar questions were involved, Judge Taft (the late Chief Justice) quoted from the opinion of Judge Dillon, with approval, the holding that, when an administrator pleads plene administravit, the plaintiff may admit the plea, and take judgment of assets quando acciderint. Fuller v. Aylesworth (C. C. A.) 75 F. 694, 702. Later in the same opinion Judge Taft said:

"The sureties, however, sign in no representative capacity. They contract as individuals that the principal shall perform the bond at all events, and, if he does not do so, whether from lack of trust funds or otherwise, they must do so themselves. If an executor superseded a judgment against him de bonis testatoris, could a surety be heard to say, when the condition was broken by an affirmance in the appellate court, that the executor had no goods of his testator, and therefore the sureties on the supersedeas bond were released from obligation to pay the judgment? Such a plea would be of no more avail than if the surety of an individual judgment debtor should seek to escape liability on the ground that the debtor was without funds."

The District Court properly overruled appellant's demurrer to appellee's amended replication, and the judgment must be, and is, affirmed.